**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ESBER BEVERAGE COMPANY, | ) | CASE NO. 5:26-cv-308 |
| Plaintiff, | ) | CHIEF JUDGE SARA LIOI |
| vs. | ) | **MEMORANDUM OPINION AND ORDER OF REMAND** |
| VINARCHY NORTH AMERICA, INC., *et al.*, | ) | |
| Defendants. | ) | |

This matter comes before the Court on plaintiff Esber Beverage Company's ("Esber") motion to remand. (Doc. No. 11 (Motion to Remand).) Defendant Vinarchy North America, Inc. ("Vinarchy") opposes the motion (Doc. No. 15 (Opposition)), and Esber filed a reply. (Doc. No. 16 (Reply).) For the reasons set forth herein, Esber's motion is **GRANTED**, and this case is **REMANDED**.

## I. BACKGROUND

This case involves claims under Ohio law brought by an Ohio plaintiff against two companies, one of which is an Ohio citizen.[1] Vinarchy argues that this Court can disregard

[1] Esber alleges in its complaint that defendant Heidelberg Distributing Company ("Heidelberg") is an Ohio citizen because Heidelberg is an Ohio corporation. (Doc. No. 9 (State Court Filings), at 13 (All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system).) In its answer, Heidelberg asserts that it is a Delaware corporation. (Doc. No. 5 (Heidelberg Answer) ¶ 3; *id.* at 1 n.1.) Pursuant to 28 U.S.C. § 1332(c)(1), a corporation is a citizen of both its state of incorporation and where it has its principal place of business. Because (1) Heidelberg acknowledges it does business in Ohio (*id.* ¶ 3); (2) neither Heidelberg nor Vinarchy dispute that Heidelberg is an Ohio citizen; and (3) "[a]ny disputed questions of fact or law are to be resolved in favor of the non-removing party[,]" *Clayton v. Zimmer US, Inc.*, No. 2:25-cv-291, 2025 WL 3022236, at *2 (S.D. Ohio Oct. 29, 2025) (citation omitted), the Court need not investigate Heidelberg's principal place of business to conclude that Heidelberg is an Ohio citizen for the limited purpose of resolving this motion.

Heidelberg's Ohio citizenship under the doctrine of fraudulent joinder. (*See* Doc. No. 1 (Notice of Removal) ¶¶ 5–13.) But fraudulent joinder is inapplicable where a plaintiff states at least one colorable claim against at least one non-diverse defendant. *Moore v. Corrigan Moving & Storage Co.*, No. 25-cv-12118, 2026 WL 1893509, at *12 (E.D. Mich. June 30, 2026) (collecting cases). That is precisely the case here. As discussed below, Esber sets forth a colorable claim against Heidelberg.

"When ruling on a motion to remand, a court generally looks to the plaintiff's complaint, as it is stated at the time of removal, and the defendant's notice of removal." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citation omitted). "But federal courts may look beyond the pleadings to assess challenged facts; this may occur, for example, when the defendant alleges that the plaintiff fraudulently joined non-diverse defendants to destroy diversity jurisdiction." *Id.* (citation omitted). Accordingly, the following comes from the complaint (Doc. No. 9, at 12–18), the notice of removal (Doc. No. 1 ¶¶ 1–15), and the supplemental materials submitted[2] as they pertain to the facts at the time of removal.

### A. The Ohio Alcoholic Beverage Franchise Act

This action arises under the Ohio Alcoholic Beverage Franchise Act's (Ohio Rev. Code §§ 1333.82 *et seq.*) (the "OABFA") highly regulated statutory regime. In Ohio, ***all*** alcohol manufacturer-distributor franchise relationships are subject to the OABFA's strictures. *See Esber Bev. Co. v. Labatt USA Operating Co.*, 3 N.E.3d 1173, 1175–76 (Ohio 2013) ("In Ohio, an alcoholic-beverage-distribution franchise is a creature of statute."); *Tri Cnty. Wholesale Distribs., Inc. v. Labatt USA Operating Co., LLC*, No. 2:13-cv-317, 2015 WL 631092, at *1 (S.D. Ohio Feb.

[2] Vinarchy's answer (Doc. No. 4 (Vinarchy Answer and Counterclaim)), Heidelberg's answer (Doc. No. 5), Esber's motion to remand (Doc. No. 11), exhibits to Esber's motion to remand (Doc. No. 11-2 (Declaration of David Esber); Doc. No. 11-3 (Vinarchy Letter); Doc. No. 11-4 (Heidelberg Email)), Esber's answer to Vinarchy's counterclaim (Doc. No. 12 (Esber Answer)), Vinarchy's opposition (Doc. No. 15), and Esber's reply (Doc. No. 16).

12, 2015) ("[The OABFA] governs the contractual relationship between [alcohol] distributors and manufacturers."). The OABFA provides only three contexts in which a manufacturer may terminate or cancel a distributor's franchise: (1) with the distributor's consent; (2) with just cause; or (3) as a "successor manufacturer."[3] *Esber Bev.*, 3 N.E.3d at 1176.

**B. Distribution & Termination**

Esber is a family-owned beverage wholesaler in Canton, Ohio who for more than 41 years "acted as the exclusive distributor" of certain Pernod Ricard "Jacob's Creek"-branded wines ("the Brands") in various Ohio counties. (Doc. No. 9, at 14; Doc. No. 11, at 3.) Vinarchy is the affiliate (or licensee) of Vinarchy Australia Limited ("VAL"), which was formed when Australian Wine Holdco Limited ("AWHL") (a consortium of international institutional investors) purchased certain assets from Pernod Ricard Wines in an asset sale transaction and merged them with AWHL's wholly owned Accolade Wines Australia Limited to form VAL. (*See* Doc. No. 1 ¶ 2; Doc. No. 4 ¶¶ 16–17; Doc. No. 9, at 15; Doc. No. 11, at 3–4.)

On July 28, 2025, Esber received a letter from Vinarchy purporting to terminate Esber's franchise in the Brands pursuant to Ohio Rev. Code §§ 1333.85(D), 1333.851. (Doc. No. 9, at 14–15; Doc. No. 11-4, at 2.) Vinarchy claimed that its acquisition of the Brands "from Pernod Ricard on May 1st, 2025[]" qualified it as a successor manufacturer entitled to terminate Esber's franchise without prior consent or just cause. (Doc. No. 9, at 15; Doc. No. 11-4, at 2.) On August 26, 2025, Esber received an email from Heidelberg explaining that Vinarchy "desired to consolidate their newly assembled portfolio with Heidelberg in all 88 counties in Ohio and were seeking to swiftly

---

[3] Ohio Rev. Code § 1333.85(D) permits a successor manufacturer to terminate a distributor's franchise without cause, however, "[t]he term 'successor manufacturer' has not been defined by the Ohio Legislature." *InBev USA LLC v. Hill Distribg. Co.*, No. 2:05-cv-298, 2006 WL 6924045, at *5 (S.D. Ohio Apr. 3, 2006). The Court does not and need not address the definition of "successor manufacturer" now because the merits of Esber's claims are not currently before the Court. *Voutsiotis v. PNC Bank, N.A.*, No. 5:23-cv-2305, 2024 WL 3345493, at *5 (N.D. Ohio July 8, 2024) (citation omitted), *aff'd*, 178 F.4th 951 (6th Cir. 2026).

transition the Products." (Doc. No. 9, at 15; *see* Doc. No. 11-4, at 1.) Two days later, Vinarchy filed "product registration forms and territory designation forms with the Ohio Department of Commerce, Division of Liquor Control designating Heidelberg as the exclusive distributor of the Brands in the State of Ohio." (Doc. No. 11-2, at 3.)

### C. Negotiation & Litigation

Vinarchy's termination letter requested Esber's sales information for the prior three years so that the parties could engage in the statutorily mandated diminished business value negotiations. (Doc. No. 11-4, at 2; Doc. No. 12 ¶ 7); Ohio Rev. Code § 1333.85(D) ("Upon termination or nonrenewal of a franchise . . . the successor manufacturer also shall compensate the distributor for the diminished value of the distributor's business that is directly related to the sale of the product or brand terminated or not renewed by the successor manufacturer."). The parties reached divergent and seemingly entrenched positions during negotiations. (Doc. No. 1 ¶ 5; Doc. No. 12 ¶ 7.)

After the negotiations stalled, Esber filed this action seeking a declaration (1) that Vinarchy's "attempted termination of Esber's franchise and the attempted award to Heidelberg of a franchise . . . in Esber's territory [was] unlawful"; (2) that "any purported transfer" of the Brands to Vinarchy was "not a 'successor manufacturer' transaction under [Ohio Rev. Code §] 1333.85(D)" such that Vinarchy cannot terminate Esber's franchise "without cause"; and (3) that "[Ohio Rev. Code §] 1333.851 does not apply in this case because no 'successor manufacturer' transaction" occurred and Vinarchy "cannot therefore transfer the Products to Heidelberg thereunder." (Doc. No. 4, at 6; Doc. No. 9, at 17.) With Heidelberg's consent, Vinarchy removed this action to federal court and argued that "[b]ecause Heidelberg does not have a legally protectable interest in the outcome of this case, Heidelberg is not a necessary party" and therefore Esber "fraudulently join[ed] Heidelberg[.]" (Doc. No. 1, at 1; *id.* ¶¶ 8–12.) Esber now moves to

remand, insisting that because Heidelberg was not fraudulently joined and the complaint raises no federal claims, removal was improper. (*See generally* Doc. No. 9, at 12–18; Doc. No. 11; Doc. No. 11-2; Doc. No. 11-3; Doc. No. 11-4; Doc. No. 16.)

## II. LEGAL STANDARD

Because removal raises significant federalism concerns, federal courts must strictly construe removal statutes. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09, 61 S. Ct. 868, 85 L. Ed. 1214 (1941). "On a motion to remand, the question is whether the district court lacks subject matter jurisdiction." *Hart v. Gen. Electric Co.*, No. 1:23-cv-12, 2023 WL 6201502, at *1 (S.D. Ohio Sept. 22, 2023) (citing 28 U.S.C. § 1447(c)). Vinarchy as the removing party bears the burden of establishing that removal was proper, *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006) (citations omitted), and a federal court must resolve any doubts about its removal jurisdiction in favor of state court jurisdiction. *Sugar v. Abbott Laboratories*, No. 5:06-cv-8000, 2007 WL 1560284, at *2 (N.D. Ohio May 29, 2007) (citing, among authority, *Shamrock Oil*, 313 U.S. at 108–09).

Vinarchy removed this action pursuant to 28 U.S.C. § 1441, invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).[4] (Doc. No. 1, at 1.) Diversity jurisdiction generally requires complete diversity between all plaintiffs and all defendants. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68, 117 S. Ct. 467, 136 L. Ed. 2d 437 (1996) (citation omitted). "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 432 (6th Cir. 2012) (quotation marks and citation omitted). The doctrine allows a federal court to exercise diversity jurisdiction without regard to

[4] There is no dispute that Esber and Vinarchy are citizens of different states and that the amount in controversy exceeds $75,000.00. (Doc. No. 1 ¶¶ 5, 13; Doc. No. 12 ¶ 7.)

the citizenship of a non-diverse party when "there is no colorable cause of action" against that party. *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 951 (6th Cir. 2011) (quoting *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009) (further citation omitted)).

To establish fraudulent joinder, "the removing party must show that there can be no recovery against the non-diverse defendant under the law of the state on the cause alleged or on the facts in view of the law[.]" *Clayton*, 2025 WL 3022236, at *2 (citation modified). If, however, "there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, this Court must [find joinder proper and] remand the case to state court." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 492 (6th Cir. 1999).

> Courts generally agree on the following two rules when deciding motions to remand that involve allegations of fraudulent joinder. First, even if the district court pierces the pleadings to consider summary-judgment-type evidence (such as depositions, affidavits, etc.), the proper standard for evaluating that evidence remains akin to that of a Rule 12(b)(6) motion to dismiss, and is arguably even more deferential. Second, any contested issues of fact must be construed in the plaintiff's favor.

*Walker*, 443 F. App'x at 954 (citation modified). The record must be viewed "in the light most favorable to the plaintiff[,]" *id.* (quotation marks and citation omitted), and "[t]he district court must resolve 'all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non removing party.'" *Coyne*, 183 F.3d at 493 (quoting *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)). "All doubts as to the propriety of removal are resolved in favor of remand." *Id.* (citation omitted).

## III. DISCUSSION

The issue before this Court on Esber's motion to remand is narrow: whether Heidelberg was fraudulently joined. Vinarchy's sole argument for fraudulent joinder is that Heidelberg is not a necessary party to Esber's declaratory judgment action. (Doc. No. 1 ¶ 10.) Ohio's declaratory judgment statute provides:

> [W]hen declaratory relief is sought under this chapter in an action or proceeding, all persons who have or claim any interest that would be affected by the declaration shall be made parties to the action or proceeding. . . . [A] declaration shall not prejudice the rights of persons who are not made parties to the action or proceeding.

Ohio Rev. Code § 2721.12(A). The Ohio Supreme Court has explained that "whether a nonparty is a necessary party to a declaratory-judgment action depends upon whether that nonparty has a legally protectable interest in rights that are the subject matter of the action." *Rumpke Sanitary Landfill, Inc. v. State*, 941 N.E.2d 1161, 1165 (Ohio 2010). In other words, *Rumpke* clarified that "only those who are 'legally affected' by a potential declaratory judgment are proper parties[.]" *Reister v. Gardner*, 202 N.E.3d 145, 150 (Ohio Ct. App. 2022) (citation omitted).

While Esber cites some pre-*Rumpke* case law in its opening brief,[5] Esber does not dispute that Heidelberg must have a legally protectable interest (as that term is understood in *Rumpke* and its progeny) to be a necessary party in this declaratory judgment action.[6] (Doc. No. 11, at 8–11; Doc. No. 16, at 8–9.) Thus, the colorable-basis analysis turns on whether Heidelberg's interest in this action is "'legally protectable,' i.e., protected by law." *Rumpke*, 941 N.E.2d at 1165 (citation omitted).

---

[5] (*See, e.g.*, Doc. No. 11, at 2 (citing *Superior Bev. Grp., Ltd. v. The Wine Grp., Inc.*, No. 4:10-cv-1971, 2010 WL 3664906 (N.D. Ohio Sept. 16, 2010); *Esber Bev. Co. v. The Wine Grp., Inc.*, No. 5:10-cv-1658, 2010 WL 3430704 (N.D. Ohio Aug. 30, 2010)).)

[6] Ohio courts have repeatedly dismissed defendants from declaratory judgment actions where those defendants were deemed not necessary parties. *Logan v. Champaign Cnty. Bd. of Elections*, 232 N.E.3d 456, 467 (Ohio Ct. App. 2023); *Haley v. Bank of Am. Corp.*, No. 98207, 2012 WL 4951284, at *4–5 (Ohio Ct. App. Oct. 18, 2012). The appropriate corollary is that, absent unusual circumstances, a plaintiff may not maintain a declaratory judgment against a party that is not necessary. Because Heidelberg's interest in this action arises solely from its purported agreement with Vinarchy, Heidelberg either has a legally protectable interest which renders it a necessary party, or else no justiciable controversy exists such that Esber can maintain this action against Heidelberg. *Woodson v. Ohio Adult Parole Auth.*, No. 02AP-393, 2002 WL 31722278, at *1 (Ohio Ct. App. Dec. 5, 2002) ("For purposes of a declaratory judgment action, a justiciable issue requires the existence of a legal interest or a right, and a controversy exists where there is a genuine dispute between parties who have adverse legal interests." (citation modified)).

**A. Whether Heidelberg Has a Legally Protectable Interest in This Action**

Esber argues that it sets forth a colorable basis for finding that Vinarchy and Heidelberg have entered into a franchise agreement for distribution of the Brands in Esber's exclusive territory, and therefore Heidelberg has a legally protectable interest in this action, which seeks to have that agreement declared unlawful. (Doc. No. 16, at 5–6, 8–9.) Esber is correct that, if such an agreement exists, there is a colorable basis to predict Heidelberg would have a legally protectable interest in any declaratory judgment action seeking to have the agreement declared unlawful. *See Fabrizi Recycling, Inc. v. Cleveland*, No. 110548, 2022 WL 1261665, at *4 (Ohio Ct. App. April 28, 2022) (holding that third party was a necessary party to declaratory judgment action "to the extent [plaintiff] requested a declaration that [third party]'s alleged contracts with [defendant] . . . were void ab initio."). The dispositive issue is therefore whether Esber sets forth a colorable basis for finding that Vinarchy and Heidelberg entered into an agreement.

Looking first to the complaint, Esber fails to allege an agreement. Excluding the jurisdictional paragraphs and prayer for relief, the complaint cumulatively mentions Heidelberg in only four paragraphs, all of which merely reference Vinarchy's prospective "desire[][,]" "inten[t][,]" or "attempt[]" to transfer the Brands to Heidelberg (Doc. No. 9, at 15–17)—not an existing or even impending transfer. A complaint must rely on more than allegations of mere intention to sufficiently allege a contract. *See Lacy v. Adair*, No. 89-ca-18, 1989 WL 150809, at *3 (Ohio Ct. App. Nov. 22, 1989) (stating on appeal from dismissal "[m]ere statements of intent, promissory expressions, or statements made to another party do not, in and of themselves, create contractual obligations." (citation omitted)); *Jones v. Jones*, No. 82-01-0004, 1983 WL 4332, at *3 (Ohio Ct. App. Apr. 13, 1983) (similar on appeal from summary judgment (citation omitted)). These allegations, without more, are inadequate to allege an agreement.

But Esber's failure to adequately plead the existence of a contract between Vinarchy and Heidelberg does not doom its motion if it sets forth a colorable basis for finding that it could so plead in an amended complaint. *See Sanchez v. Wal-Mart Assocs., Inc.*, No. 1:25-cv-1267, 2026 WL 1102913, at *2 (E.D. Cal. Apr. 23, 2026) ("Federal district courts have often remanded cases . . . when it appears that a plaintiff could pursue a viable claim against a non-diverse defendant, with a clarifying amendment if necessary." (collecting cases)); *see also Detnerski v. Biomet Orthopedics, LLC*, No. 1:13-cv-2412, 2013 WL 12137143, at *2 (N.D. Ohio Dec. 23, 2013) (granting motion to remand where "[e]ven if the present complaint is flawed because of a technicality, [p]laintiff could amend his complaint to properly plead the claim."). Esber can sufficiently allege an agreement by merely showing that it "*might* be able to present a series of facts establishing that the parties reached an agreement . . . ." *Alexander Loc. Sch. Dist. Bd. of Educ. v. Vill. of Albany*, 101 N.E.3d 21, 33 (Ohio Ct. App. 2017) (emphasis added). As discussed below, Esber provides such a basis in its remand briefing.

Esber's factual submissions (including a declaration from its vice president, the Ohio Department of Commerce, Division of Liquor Control's current brand distributor registrations, and communications with Heidelberg and Vinarchy) indicate conduct consistent with a franchise distribution agreement between Vinarchy and Heidelberg, including: (1) on July 25, 2025, a representative of Vinarchy sent Esber a letter purporting to terminate Esber's franchise as a successor manufacturer of the Brands (Doc. No. 11-3); (2) on August 26, 2025, a representative of Heidelberg emailed Esber hoping to "address a path to transition the [Brands]" to Heidelberg (Doc. No 11-4, at 1); and (3) on August 28, 2025, Vinarchy filed "product registration forms and territory designation forms with the Ohio Department of Commerce, Division of Liquor Control designating Heidelberg the exclusive distributor of the Brands in the State of Ohio." (Doc. No. 11-

2 ¶ 7 (citing *Active Brands*, Ohio Product Registration Online, https://perma.cc/8CSZ-LDRS (last visited Sept. 4, 2026)).)[7] Esber further argues, and Vinarchy does not dispute, that it is the "new distributor" who "typically compensates the terminated distributor for business loss[.]" (Doc. No. 11, at 5; Doc. No. 15, at 12, 14; Doc. No. 16, at 5.) These facts sufficiently indicate (for purposes of this colorable-basis analysis) that Esber will be able to allege (in an amended complaint) that Vinarchy and Heidelberg possess a franchise agreement for Heidelberg to distribute the Brands in Esber's exclusive territory. *See Alexander Loc. Sch. Dist.*, 101 N.E.3d at 33 (holding plaintiff adequately alleged contract by alleging communications and conduct consistent with the existence of a contract).

Because Esber can allege Vinarchy and Heidelberg have an existing agreement implicated by the declaration Esber seeks, Esber sets forth a colorable basis for finding that Heidelberg has a legally protectable interest in this action. *See Fabrizi Recycling, Inc.*, 2022 WL 1261665, at *4. Resultantly, Heidelberg is a necessary party to Esber's declaratory judgment action (at least for purposes of this colorable-basis analysis) and was therefore not fraudulently joined. As discussed below, Vinarchy's arguments to the contrary are unavailing.

*1. Vinarchy's Arguments*

Vinarchy, in removing this action, argues that Heidelberg cannot have a legally protectable interest in any purported franchise agreement to distribute the Brands in Esber's territory because "Vinarchy cannot transfer the brands to Heidelberg until after Vinarchy has compensated Esber for

[7] The Court notes that, as of August 26, 2026, the Ohio Department of Commerce, Division of Liquor Control's Active Brand Lookup tool located at https://perma.cc/8CSZ-LDRS lists "DAYTON HEIDELBERG DISTR CO" as the distributor of all Jacob's Creek wine brands in Ohio. The Active Brand Lookup indicates that the "approval date" for such distributor identification is "8/28/2025[.]" Indeed, Vinarchy appears to admit, via declaration from its managing director, that it filed the forms designating Heidelberg as its distributor but argues that it only filed such designations in *anticipation* of Heidelberg becoming its statewide distributor of the Brands. (Doc. No. 15, at 12.) Vinarchy maintains that "Vinarchy did not authorize Heidelberg to begin distributing the Brands[.]" (*Id.*)

the diminished value of Esber's business." (Doc. No. 1 ¶ 8 (citing Ohio Rev. Code § 1333.851(A)(1)).) Vinarchy claims that because Esber seeks a declaration that Vinarchy is not a successor manufacturer, if Esber is correct, "then Vinarchy cannot transfer the brands at all." (*Id.* ¶ 9.) Vinarchy has it backwards. Regardless of Heidelberg's inability to legally distribute the brands in Esber's territory until Esber's franchise is lawfully terminated, Heidelberg has a legally protectable interest in the declaration Esber seeks if Heidelberg has an agreement with Vinarchy implicated by this action. *See Fabrizi*, 2022 WL 1261665, at *4. Heidelberg has a legally protectable interest precisely *because* Esber seeks a declaration invalidating a purported contract to which Heidelberg is a party.

Vinarchy, in opposing remand, argues that while it intends to award Heidelberg a franchise in the Brands in Esber's territory and previously designated Heidelberg as its distributor for the Brands statewide, it has not, will not, and cannot authorize Heidelberg to distribute the Brands in Esber's territory until Esber's franchise has been terminated. (Doc. No. 15, at 6, 11–12.) This argument fails because Vinarchy's lack of authorization does not negate the existence of an agreement affected by this action. Esber's submissions support a finding that Vinarchy and Heidelberg have an agreement for Heidelberg to distribute the Brands in Esber's territory. Unless Vinarchy can disprove the existence of that agreement, Heidelberg has a legally protectable interest in an action seeking to declare that agreement unlawful. Vinarchy's submissions, at best, raise a factual dispute as to the existence of a contract, which "must be construed in the plaintiff's favor." *Walker*, 443 F. App'x at 954.

Vinarchy next argues that post-*Rumpke* decisions including *Ma v. Cincinnati Children's Hosp. Med. Ctr.*, 153 N.E.3d 866 (Ohio Ct. App. 2020)[8] and *M6 Motors, Inc. v. Nissan of N. Olmsted, LLC*, 14 N.E.3d 1054 (Ohio Ct. App. 2014)[9] preclude the possibility of a colorable claim against Heidelberg. (Doc. No. 1 ¶¶ 6–11; Doc. No. 15, at 3–6.) Those cases are distinguishable. Absent on point case law, on the colorable-basis analysis, this Court must resolve all ambiguities in the controlling state law in favor of remand. *Coyne*, 183 F.3d at 493 (citation omitted).

Finally, Vinarchy argues that the Sixth Circuit's decision in *Tri Cnty. Wholesale Distribs., Inc. v. Labatt USA Operating Co.*, 828 F.3d 421 (6th Cir. 2016), negates any legally protectable

---

[8] The plaintiff in *Ma*, Dr. Ma, sought a declaratory judgment against his employer hospital and its affiliated medical school that his contract's "tenure status entitled him to both continued employment without termination absent just cause and a meaningful opportunity to be heard prior to termination." 153 N.E.3d at 873. Dr. Ma was employed by the hospital, but by virtue of his contract, was nominally a tenured employee at the medical school. *Id.* at 869–72. The trial court dismissed the defendant as an unnecessary party, and after the trial court granted summary judgment in Dr. Ma's favor, the hospital argued on appeal that the trial court lacked jurisdiction because the medical school was a necessary party who had not been joined. *Id.* at 880–81. The appellate court held that the medical school was not a necessary party, reasoning that a nonparty's "legally protectable interest" requires more than a practical stake in the outcome, and the hospital "offer[ed] no concrete reason why the declaratory judgment here would affect the College of Medicine, never articulating what 'legally protectable interest' the College of Medicine maintains in this fight." *Id.* Importantly, the court noted "that both the College of Medicine and Children's seemed to confirm the contrary point in their briefing below," which reinforced the conclusion that there was no jurisdictional defect for failure to join a necessary party. *Id.* Because Dr. Ma was only nominally employed by the medical school, the affiliation agreement between the hospital and medical school specifically disclaimed the medical school's tenure obligations for affiliated hospital employes, and the defendants disclaimed the medical school's legal interest, the Court finds *Ma* inapposite. *See also id.* at 884.

[9] In *M6 Motors*, Middleburg Heights, a Nissan dealership, sought permission from Nissan to relocate its dealership, but Nissan denied the request "based upon North Olmsted Nissan's threatened [statutory] protest," under Ohio Rev. Code § 4517.50. 14 N.E.3d at 1064. Middleburg Heights subsequently sought a declaratory judgment against North Olmsted seeking a judicial interpretation of the word "further" under Ohio Rev. Code § 4517.50(C)(3). *Id.* at 1057–60. North Olmsted moved to dismiss, arguing under Ohio Rev. Code § 2721.12(A) that "a declaratory judgment [would] not terminate the uncertainty or" controversy absent Nissan's presence. *Id.* at 1064. The trial court rejected this argument, holding that Nissan "was not a necessary party[,]" that the action "would not bind" Nissan, and that Nissan possessed "no legally protectable rights relating to either count for which Middleburg Heights [] has sought relief." *Id.* (citation modified). The appellate court affirmed, concluding that Nissan's interest in avoiding a future relocation dispute was merely practical and the action, confined to a declaration under § 4517.50(C)(3), did not implicate any legally protectable interest of Nissan's. *Id.* at 1061–65. Because Nissan's identified interest, avoiding a future relocation dispute, does not resemble the invalidation of a valuable agreement, the Court also finds *M6 Motors* inapposite.

interest a new distributor has in an action to declare a manufacturer not a successor manufacturer.[10] (Doc. No. 15, at 6–7.) Vinarchy interprets the decision, which did not provide "the new distributor [with any] compensation for the delay[,]" to mean "that the only party that had a legally protectable interest in that situation was the manufacturer – not the new distributor." (*Id.* at 7 (citation omitted).) Vinarchy reads *Tri Cnty.* too broadly. While the manufacturer in *Tri Cnty.* identified its preferred new distributor during the litigation, there was no evidence that the manufacturer and new distributor had yet formed a franchise agreement covering the old distributors' territory. Here, in contrast, Heidelberg's legally protectable interest in the action arises by virtue of such an agreement (as alleged by Esber in its briefing and alluded to in its complaint). No party raised, and the Sixth Circuit did not address, the issue of whether the identified new distributor had a legally protectable interest in the action. Given the facts as set forth by Esber, on the colorable-basis analysis, this Court must read all disputed facts and ambiguities in controlling law in favor of remand. *Coyne*, 183 F.3d at 493 (citation omitted).

**B. Attorneys' Fees**

Esber urges this Court for an award of attorneys' fees and costs because it believes that existing law "already established that Esber had a 'colorable basis' for naming Heidelberg as a Defendant" (Doc. No. 11, at 14), and there was clear evidence "that Vinarchy NA had already

[10] In *Tri Cnty*, distributors who received a termination notice from a self-proclaimed successor manufacturer sought *inter alia* a declaration that the manufacturer was not a successor manufacturer entitled to terminate the distributors without just cause or prior consent. 828 F.3d at 423–25. The district court granted partial judgment on the pleadings to the manufacturer (on the Takings-Clause claim), granted partial summary judgment to the manufacturer (on successor manufacturer status), and, after a bench trial determined the value diminution of the distributors' businesses. *Id.* at 425. On appeal, the Sixth Circuit affirmed the trial court's decision except whether the successor manufacturer should be able to deduct the distributors' projected profits during the pendency of the litigation. *Id.* at 433–35. The court determined that the successor manufacturer was entitled to deduct the distributors' projected profits from the diminished value payment because allowing the distributors to retain those profits and receive the diminished value payment would be a windfall. *Id.* The issue of compensation for the new distributor was not raised, and the court did not address it.

entered into a distribution agreement" with Heidelberg. (*Id.* at 15; *see also* Doc. No. 16, at 10.) Vinarchy opposes such an award with minimal argument. (Doc. No. 15, at 8.)

An improperly removed case must be remanded, and the order "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Section 1447(c) "places an award of costs and attorney fees . . . squarely within the discretion of the district court, but subject to the guidance set forth by the Supreme Court in *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136–37, 126 S. Ct. 704, 163 L. Ed. 2d 547 (2005)." *Warthman v. Genoa Twp. Bd. of Trs.*, 549 F.3d 1055, 1059 (6th Cir. 2008). "'Absent unusual circumstances,' the Supreme Court instructs that fee awards are appropriate 'only where the removing party lacked an objectively reasonable basis for seeking removal.'" *Id.* (citation omitted). Objective reasonableness in removing an action, among other factors, may depend on "the clarity of the law at the time the notice of removal was filed." *Kent State Univ. Bd. of Trs. v. Lexington Ins. Co.*, 512 F. App'x 485, 488–89 (6th Cir. 2013) (quoting *Lott v. Pfizer*, 492 F.3d 789, 792 (7th Cir. 2007) (further citation omitted)). The Sixth Circuit "has similarly instructed that 'an award of costs, including attorney fees, is inappropriate where the defendant's attempt to remove the action was 'fairly supportable,' or where there has not been at least *some* finding of fault with the defendant's decision to remove.'" *Warthman*, 549 F.3d at 1059–60 (emphasis in original and citations omitted).

"At some point, a plaintiff's claim becomes so plainly 'colorable' that, once viewed through the lens of the demanding fraudulent joinder standard, remand is no longer a close question." *Kent State*, 512 F. App'x at 492. This is not such a case. As discussed below, Vinarchy had an objectively reasonable basis for attempting to remove this case, though it was ultimately unsuccessful.

Esber believes that *Superior* alone justifies an award of fees because it forecloses any "objectively reasonable" basis Vinarchy had for believing Heidelberg was fraudulently joined. (Doc. No. 11, at 14–15; Doc. No. 16, at 10.) The Court disagrees. *Superior* is distinguishable for at least three reasons: (1) *Superior* was decided pre-*Rumpke*; (2) the plaintiffs in *Superior* asserted additional claims for injunctive relief and unjust enrichment; and (3) *Superior* specifically recognized that a similar suit brought in the successor manufacturer context may be different. 2010 WL 3664906, at *1, 3 n.2.

Even if *Superior* were not distinguishable from this action, Vinarchy's decision to remove was still objectively reasonable based on the complaint and clarity of the law. As discussed above, Esber's complaint does not sufficiently allege an agreement between Vinarchy and Heidelberg, and Ohio law on what constitutes a legally protectable interest post-*Rumpke* is at least ambiguous on some salient points.

Finally, Esber's argument that Vinarchy's failure to mention that it had filed the territory and designation forms with the Ohio Department of Commerce when it removed this action is unavailing. (Doc. No. 11, at 15; Doc. No. 16, at 10.) It is Esber, not Vinarchy, who found those filings significant evidence of the existence of an agreement, yet Esber does not even allude to them in its complaint. If Esber was unaware of these filings at the time it filed its complaint, it has not so indicated. Accordingly, the Court cannot say that Vinarchy lacked an objectively reasonable basis for removing the action. Esber's request for attorneys' fees is **DENIED**.

## IV. CONCLUSION

For the reasons stated herein Esber did not fraudulently join Heidelberg as a defendant. This Court therefore lacks subject matter jurisdiction over this action. Accordingly, Esber's motion to remand (Doc. No. 11) is **GRANTED**, and this case is **REMANDED** to the Stark County Court of Common Pleas.

**IT IS SO ORDERED**.

Dated: September 4, 2026

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**